U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed October 11, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NINA WHITE-ROBINSON, | § | CASE NO. 11-32080-SGJ-7 |
| | § | |
| DEBTOR. | § | |

**<u>MEMORANDUM OPINION AND ORDER DIRECTING CHAPTER 7 DEBTOR'S COUNSEL TO APPEAR AND SHOW CAUSE WHY SHE SHOULD NOT PAY REASONABLE ATTORNEY'S FEES AND EXPENSES INCURRED BY LANDLORD, AS A RESULT OF DEBTOR'S FRIVOLOUS MOTION FOR CONTEMPT AND SANCTIONS PURSUED AGAINST LANDLORD</u>**

**I.   INTRODUCTION**

A violation of the automatic stay in a bankruptcy case by a creditor can be a serious, unfair, disruptive and, of course, unlawful thing.  *See* 11 U.S.C. § 362(a).  In some cases, the consequences of such a violation may be significant and damages may be in order.  *See* 11 U.S.C. § 362(k).  In still other cases, a relatively minor and technical violation of the automatic stay by a creditor—that causes little or no real harm—can be turned

into a "cause celebre" by a debtor or debtor's counsel.[1] Litigation can erupt that becomes a frivolous side show. Such is the case here.

In the above-referenced case, certain postpetition acts were undertaken by a commercial landlord toward a Chapter 7 debtor (the latter of whom was a sole proprietor), that were, in certain instances, *de minimis* and unintentional stay violations and, in still other instances, wholly justified and not truly stay violations. The debtor suffered no credible harm. Nevertheless, the debtor filed a Motion for Contempt and Sanctions (the "Motion") seeking damages from the landlord, which Motion contained statements that were not only largely fictional, but also required two days of court time (not counting discovery disputes). All in all, the landlord's acts were so blown out of proportion by the debtor and her counsel—and have so forced the landlord to extraordinarily defend itself against exaggerated statements in pleadings and court hearings—that the court is compelled to consider fee-shifting as to debtor's counsel pursuant to Fed. Rule Bankr. Proc. 9011(c)(1)(B), 28 U.S.C. § 1927(b), and pursuant to the court's inherent authority. The court finds this most unseemly.

## II. BACKGROUND FACTS

The facts are that Nina White-Robinson (the "Debtor") filed

---

[1] *In re Zaber*, 223 B.R. 102, 104 (Bankr. N.D. Tex. 1998).

a voluntary Chapter 7 bankruptcy case on March 31, 2011 (the "Petition Date"). The Debtor was employed full-time at EDS/Hewlett Packard, for approximately seven years prior to the Petition Date, most recently earning $5,250 (gross) per month. *E.g.,* DE ## 17 & 18 (*see* Form B22A). The Debtor testified that she lost her job at EDS/Hewlett Packard shortly before filing bankruptcy.[2] The Debtor listed in her Bankruptcy Schedules some $399,872.13 in assets (including a home and a second residential rental property) and $582,520.82 in liabilities as of the Petition Date. *See* DE # 18. In addition to working full time at EDS/Hewlett Packard, the Debtor owned and operated, prepetition, as a sole proprietor, a clothing boutique at a shopping center in Allen, Texas known as Madison Envy (the "Retail Location"), at which the Debtor maintained various inventory (mostly clothing and costume jewelry) and equipment (shelving, mannequins, and a few items of furniture). The Debtor's interest in such property was valued in her Schedules at $3,500. There were also various hair styling equipment and products stored at the Retail Location

---

[2] The Debtor's Bankruptcy Schedules reflect that she is married, but her spouse did not file bankruptcy. The Debtor stated in her Form B22A that her husband's income is $8,090 (gross) per month, and that, in addition to now drawing unemployment income, the Debtor also receives $700 per month from her residential rental property. The Debtor has sworn (in her Amended Voluntary Petition filed in this case) that most of her debts are business debts. DE # 19. Anecdotally, such a legal conclusion seems somewhat dubious to the court, based on the court's review of the Schedules (it is not apparent that anything other than the landlord's claim—as further described herein—is business in nature).

(scheduled at a value of $1,000), since the Debtor also, apparently, works as a professional hairstylist.  Hereinafter, the assets associated with the Debtor's clothing boutique and the assets associated with the hairstyling business will be referred to as the "Business Assets."

The evidence presented to the court showed that the landlord at the Retail Location ("Landlord DDR") locked the Debtor out of the Retail Location, prepetition, in December 2010, and filed a lawsuit in a state court in Collin County against the Debtor for breach of the lease ("Collin County Lawsuit") in January 2011. The Debtor had entered into a lease agreement with Landlord DDR in late 2009 and actually began occupying the Retail Location in December 2009.  Apparently the business (which the Debtor testified was being operated by family members while she worked at EDS/Hewlett Packard) had not been very successful and the Debtor had paid very little rent to Landlord DDR during the roughly one year she occupied the Retail Location.  Landlord DDR accumulated a large claim against the Debtor.

When the Debtor filed bankruptcy three months after being locked out of the Retail Location, her counsel immediately (on the Petition Date) began demanding that Landlord DDR give the Debtor access to the Retail Location and let her remove the Business Assets there.  The evidence was clear that the Landlord DDR promptly began communications with the Chapter 7 bankruptcy

4

trustee ("Chapter 7 Trustee") on the day that the Debtor filed the bankruptcy case, asking for guidance from him as to whether to allow the Debtor access to the Business Assets or not. The Chapter 7 Trustee replied that the Business Assets should be regarded as property of the bankruptcy estate (11 U.S.C. § 541) and neither the Debtor nor anyone else should do anything with the assets at this early juncture of the case—as the Chapter 7 Trustee had not even seen the Bankruptcy Schedules yet and had no idea what assets might be justifiably claimed as exempt. The Landlord DDR would not thereafter let the Debtor into the Retail Location without coordination and instruction from the Chapter 7 Trustee. The Chapter 7 Trustee testified that, in his view, Landlord DDR never did anything wrong or inconsistent with the Chapter 7 Trustee's instructions. On or about May 3, 2011, the Chapter 7 Trustee visited the Retail Location and invited the Debtor to come in and retrieve some items that he deemed personal in nature. However, the Chapter 7 Trustee did not want the Debtor to take everything at the Retail Location because of concern that the Business Assets might not pass muster as exempt assets; he or some creditor might want to object to the Debtor's designation of the Business Assets as exempt. During the case, the Chapter 7 Trustee ultimately decided to abandon the Business Assets. However, the Landlord DDR filed an objection to the Debtor's exemptions, including the Business Assets. The court

ultimately overruled Landlord DDR's objections and allowed the Debtor's exemptions at a hearing on August 8, 2011. *See also* DE # 35. The Landlord DDR thereafter allowed the Debtor to retrieve the Business Assets.

During the pendency of the Landlord DDR's objection to exemptions (but before the court's resolution of the objection), on July 20, 2011, the Debtor filed her Motion for Contempt and Sanctions (the "Motion") against the Landlord DDR for its alleged willful violations of the automatic stay. According to the Motion, the Landlord DDR violated the automatic stay in this case by:

(a) making "repeated" collection phone calls to the Debtor postpetition, after receiving notification of the bankruptcy filing;

(b) utilizing "aggressive collection efforts" by demanding payments for prepetition debt in the form of "invoices" to the Debtor postpetition ("[f]or example . . . an invoice dated April 15, 2011");

(c) continuing to prosecute the Collin County Lawsuit postpetition;

(d) exercising control over property of the estate (the Business Assets at the Retail Location)—and, in fact, damaging certain items (stating that Landlord DDR "relentlessly worked to thwart" Debtor's access to her Business Assets); and

(e) filing a baseless objection to the Debtor's exemptions.

The Debtor further accused Landlord DDR of having an "intent to play games" and this has caused Debtor to suffer "insomnia, marital difficulty, and emotional distress over the unnecessary delays, stay violations and harassing tactics employed by DDR

through the bankruptcy proceeding." *See* DE # 30.

The evidence developed in two days of trial (August 22, 2011 and October 6, 2011) revealed that, in fact:

(a) Landlord DDR placed **one phone call to the Debtor** and one phone call to Debtor's counsel (leaving a message; no conversation) at approximately 1:25 p.m. on the Petition Date, **before** Landlord DDR had been sent notice of the bankruptcy filing, and Landlord DDR **never made another phone call to the Debtor postpetition** (phone records were produced);

(b) exactly **one** computer-generated invoice was sent by Landlord DDR to the Debtor dated April 15, 2011 and received by Debtor on April 20, 2011, **not multiple invoices**, and the evidence was credible that this was computer error (and Debtor's counsel never even mentioned receipt of the invoice to Landlord DDR until the Motion was filed);

(c) Landlord DDR did **nothing whatsoever** to further prosecute the Collin County Lawsuit postpetition (a certified copy of the docket sheet for the action was produced)—in fact, Debtor's counsel never filed a Notice of Suggestion of Bankruptcy in the Collin County Lawsuit, so the lawsuit remained open but dormant during the bankruptcy case—a fact Debtor's counsel blames on Landlord DDR); and

(d) Landlord never did anything to the Business Assets except store them and—in coordination with the Chapter 7 Trustee— decline to give the Debtor access to them until the exemption objection deadline either passed and any objections resolved.

Not only was there no evidence that any significant stay violations occurred, but there was no evidence of any real **damages** suffered by the Debtor. The Debtor complains that certain Business Assets were moved and ultimately returned to her in a damaged condition, but the only credible evidence was that the Landlord DDR may have moved items to show the Retail Location to future potential tenants, and any damage was *de minimis,* such

7

as clothing items put in storage bags, necessitating pressing and cleaning (the court notes that the Landlord DDR offered to pay for this). Additionally, the Debtor complains that a shampoo bowl, ladder and some dressing room curtains were never returned to her; there was never any real proof of this. Finally, despite the claims of emotional distress, the Debtor testified that she had not been to a doctor, a counselor, or taken any special medication during the pendency of the bankruptcy case. Apparently the Debtor now has a new job (information concerning a new job merely came out during trial, in connection with discussions about the Landlord DDR's difficulty in arranging times with the Debtor to see the allegedly damaged Business Assets).

In summary, the Motion all boiled down to: (a) **one invoice** erroneously sent to the Debtor postpetition (technically this was indeed a stay violation); and (b) an allegedly missing shampoo bowl, ladder and curtains. There were no phone calls made by Landlord DDR after notification of the bankruptcy. There were no multiple invoices sent to the Debtor postpetition. The Landlord DDR did nothing in the Collin County Lawsuit postpetition. The Landlord DDR did not improperly deny access to the Business Assets to the Debtor—but merely did what the Chapter 7 Trustee told Landlord DDR to do. And the Landlord DDR exercised its legal right to object to the Debtor's exemptions. The fact that

the court ruled against Landlord DDR on this is not evidence that its objection to exemptions was ill-motivated or was a sinister, bad faith tactic to collect on a prepetition debt.

In addition to a lack of substance, the Motion and the Debtor's prosecution of it were also fraught with procedural deficiencies: (a) Debtor's counsel did not conference (or attach a certificate of conference) before filing the Motion; (b) the Debtor did not appear for a deposition that was properly noticed by Landlord DDR (the Debtor's counsel argued that she was not required to because she received such unreasonably short notice of the deposition; but she did not file a motion for protective order or motion to quash); and (c) the Debtor only filed (but did not serve) her witness and exhibit lists on the morning of the hearing on the Motion, rather than three days before the hearing as required by the Local Rules of this court.

### III.  SHOW CAUSE ORDER

The court denied the Motion on October 6, 2011. Landlord DDR argued at the close of the hearing on the Motion that it has incurred a staggering amount of fees and costs, due to the Debtor's prosecution of the seemingly frivolous Motion. Landlord DDR provided evidence that it made an Offer of Judgment, pursuant to Federal Rule of Civil Procedure 68, to avoid a hearing on the Motion. The Offer of Judgment was rejected by the Debtor. Thus, Landlord DDR argues that it is at least able to shift costs to

9

Debtor's counsel. But Landlord DDR asks the court to do more. Landlord DDR argues that the Debtor and her counsel were so outrageous with making misstatements to the court that **fee** shifting is warranted.

Words *do* have consequences. Here, the Debtor and her counsel did more than engage in aggressive advocacy or hyperbole. They stated in pleadings that the Landlord DDR made "**repeated**" collection phone calls to the Debtor after notification of the bankruptcy filing, when the Landlord DDR did not make **any** calls after notification. Debtor's counsel stated in pleadings that Landlord DDR engaged in "aggressive collection efforts" by sending postpetition "invoices" to the Debtor—when the evidence was that the Landlord DDR merely sent *one* postpetition. The Debtor's counsel wholly misstated that the Landlord DDR continued to prosecute the Collin County Lawsuit postpetition. Finally, Debtor's counsel either misrepresented reality, or showed a lack of understanding of the Chapter 7 process, by stating that the Landlord DDR "relentlessly worked to thwart" Debtor's access to her Business Assets, when the Landlord DDR simply did what the Chapter 7 Trustee told it to do.

Under Federal Rule of Bankruptcy Procedure 9011(c)(1)(B), this court, on its own initiative, may enter an order describing conduct that appears to violate subsection (b) of 9011 and direct an attorney to show cause why she has not violated subsection

(b).  The conduct of Debtor's counsel in connection with the Motion, as described in this order, appears to violate Rule 9011(b) in that the allegations and other factual contentions in the Motion did not have evidentiary support and, after reasonable inquiry, it should have been obvious that they did not have evidentiary support.  The claims in the Motion were not warranted by existing law or by a non-frivolous extension of existing law.  The Motion appears to have been presented for an improper purpose, such as to harass, increase expenses and perhaps extort a settlement from Landlord DDR.  Accordingly, it is hereby

**ORDERED** that Debtor's counsel, M. Tayari Garrett, shall appear on **December 1, 2011, at 2:30 p.m.,** at the United States Bankruptcy Court for the Northern District of Texas, 1100 Commerce St., 14th Floor, Dallas, TX, Courtroom of the Honorable Stacey G. C. Jernigan, and **SHOW CAUSE** why she should not be imposed with monetary sanctions or other penalty, including reimbursement of the reasonable attorney's fees and expenses of Landlord DDR that were incurred as a direct result of violations of Debtor's counsel of Rule 9011(b).

**IT IS FURTHER ORDERED** that, on the same date and time, Debtor's counsel shall appear before this court and **SHOW CAUSE** why she should not be required to reimburse the reasonable attorney's fees and expenses of Landlord DDR incurred in connection with the Motion, pursuant to 28 U.S.C. § 1927.

Specifically, Section 1927 provides that:

> Any ***attorney*** or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.[3]

The Fifth Circuit has interpreted this statute as requiring evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *See Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). In this regard, the court is concerned not only with the misstatements made in the Motion, but also with potentially vexatious behavior of Debtor's counsel during discovery and proceedings leading up to the hearings on the Motion. For example, it was represented by Landlord DDR's counsel that Debtor's counsel made 435 objections during a deposition that Landlord DDR took of Debtor. As another example, Debtor's counsel admitted that she "blocked" emails from Landlord DDR's counsel because she considered his repeated and frequent emails asking for discovery to constitute "criminal harassment" of her—something about which Debtor's counsel stated she even visited with a police officer.

**IT IS FURTHER ORDERED** that, on the same date and time,

---

[3] 28 U.S.C. § 1927 (emphasis added). The Fifth Circuit has expressly held that bankruptcy courts have the ability to impose sanctions under 28 U.S.C. § 1927. *See Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991).

Debtor's counsel shall appear before this court and **SHOW CAUSE** why the court should not impose monetary sanctions or other penalty upon her pursuant to the court's inherent power to impose sanctions. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991); *see also Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997). Inherent sanctioning power is "based on the need to control court proceeding[s] and [the] necessity of protecting the exercise of judicial authority in connection with those proceedings." *Case,* 937 F.2d at 1023.[4]

**IT IS FURTHER ORDERED** that Debtor's counsel shall file a Response to this Show Cause Order at least 10 days prior to the hearing on this matter.

**IT IS FURTHER ORDERED** that, since Landlord DDR presented invoices and testimony concerning its attorney's fees and costs at the October 6, 2011 hearing on the Motion, and raised the possibility of asking for attorney's fees and costs in its responsive pleading to the Motion, no further discovery from Landlord DDR is permitted.

**IT IS FURTHER ORDERED** that, pursuant to Fed. Rule Bankr.

---

[4] Specifically, the Supreme Court has recognized that courts have the inherent power to issue sanctions against litigants for their bad faith conduct and that a court may assess attorney's fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers*, 501 U.S. at 43-46; *Aleyska*, 421 U.S. at 258-259. Although *Chambers* involved a district court, the inherent powers described by the Supreme Court "are equally applicable to the bankruptcy court." *Case*, 937 F.2d at 1023.

Proc. 7068 and Fed. Rule Civ. Proc. 68, the court shall determine, as necessary, whether the costs of the Landlord DDR should be paid by Debtor.

###END OF MEMORANDUM OPINION AND ORDER###